UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | |
|---|---|
| ERIC COFFEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: _____ |
| ) | |
| ) | **JURY DEMANDED** |
| GENENTECH, INC., THE GENENTECH ) | **ON STATE LAW CLAIMS** |
| THERAPEUTIC AREA VARIANCE WINDOW ) | |
| SEVERANCE PLAN, GENENTECH, INC., AS ) | |
| ADMINISTRATOR OF THE GENENTECH ) | |
| THERAPEUTIC AREA VARIANCE WINDOW ) | |
| SEVERANCE PLAN, ) | |
| ) | |
| Defendants. ) | |

# COMPLAINT

COMES now the Plaintiff, Eric Coffey (hereinafter "Coffey" or "Plaintiff"), by and through counsel, and files this Complaint against the Defendants, Genentech, Inc. (hereinafter "Genentech" or the "Company"), the Genentech Therapeutic Area Variance Window Severance Plan ("TAVWSP" or the "Plan"), and Genentech as Administrator of the Genentech Therapeutic Area Window Severance Plan ("Administrator") and respectfully shows this Honorable Court as follows:

## NATURE OF ACTION

1. This action arises out of Defendants' failure to meet obligations under ERISA, including failure to provide a written plan document, failure and refusal to provide promised benefits, and breaches of fiduciary duties all in violation of the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001 *et seq*. ("ERISA"). In the alternative, Plaintiff alleges claims under Tennessee common law for negligent misrepresentation, breach of contract, and promissory estoppel.

## THE PARTIES

2. Coffey is a citizen and resident of Knox County, Tennessee, residing at 3241 Hankins Lane, Knoxville, Tennessee 37914. At all times relevant hereto, he worked for Genentech and was a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7), in the TAVWSP.

3. Genentech, Inc., is a foreign corporation, organized under the laws of the State of Delaware and registered to do business in the State of Tennessee with a principal office at 1 DNA Way, Bldg. 25, South San Francisco, California 94080-4918. Genentech may be served with process through its registered agent, identified by the Tennessee Secretary of State as Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

4. The TAVWSP, created and maintained by Genentech, is an ERISA plan as defined in Section 3(1) of ERISA, 29 U.S.C. § 1002(1). It may be served with process at 1 DNA Way, MS 49, South San Francisco, California 94080-4918.

5. Genentech, Inc., Plan Administrator for the TAVWSP, may be served with process in such capacity through its registered agent, identified by the Tennessee Secretary of State as Corporation Service Company, 2908 Poston Avenue, Nashville, Tennessee 37203-1312.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this case pursuant to 29 U.S.C. § 216(b), 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 29 U.S.C. § 1132(e)(2) (ERISA) because the Eastern District of Tennessee is the judicial district in which the unlawful practices alleged herein were committed and the District in which one or more of the Defendants may be found.

**EXHAUSTION OF REMEDIES IN PRE-LITIGATION CLAIMS PROCESS**

8. Over a period spanning approximately a year and a half (June 2020-January 2022), through a series of letters and emails by counsel for Plaintiff and general counsel for the Defendants, Plaintiff exhausted administrative remedies provided under the terms of the Genentech/Roche Pharma Transitional Benefit Plan (the "Transitional Benefit Plan") prior to filing this action. As Plaintiff is claiming rights to benefits under a separate and distinct plan, the TAVWSP, and not the Transitional Benefit Plan. As he was never provided a plan document for the TAVWSP, Plaintiff has not been notified of any additional exhaustion of remedies requirements under said plan.

**FACTS RELEVANT TO ALL CLAIMS**

9. As of spring 2020, Coffey was employed with Genentech as a Sales Representative. At that time, he had been employed with Genentech for approximately twenty (20) years.

10. Throughout Coffey's employment with Genentech he earned "meets performance," "exceeds performance" reviews on numerous occasions and two "exceptional performance" job performance evaluations.

11. During Coffey's employment with Genentech as a Sales Representative, he produced sales for Genentech in excess of $750,000,000.00. Coffey's pharmaceutical sales during his employment included products such as Herceptin, Rituxan, Gazyva and Ocrevus.

12. As of spring 2020, Coffey's sales territory on behalf of Genentech included Knox County, Tennessee and Tennessee counties east of Knox County, and south to Chattanooga, and west to Cookeville.

13. As of April 30, 2020, Coffey had made no plans and had expressed no intentions of retiring or resigning from his employment with Genentech in 2020.

14. As of April 30, 2020, Coffey did not have and had not sought out any offers of employment from other pharmaceutical companies, nor was he searching for other employment.

15. As of April 30, 2020, Coffey's immediate supervisors were Shannon Petty ("Petty"), Genentech District Manager; Robert Nelson ("Nelson"), Regional Manager; and Mike Jones ("Jones"), National Sales Director.

16. In 2017, Genentech instituted a very large layoff in its Oncology Business Unit. All employees that were not retained were offered a severance package. This layoff was not voluntary.

17. In 2019, again, Genentech structured an even larger layoff to include Oncology and other Genentech sales forces. Many home office employees were laid off as well.

18. The 2017 and 2019 layoffs were largely due to decreasing revenues and patent-life expiration of name brand drugs. The primary difference between those two layoffs was that the 2019 was much larger and those employees affected were given the option to resign and take a severance package.

19. In 2019/2020 Coffey's business unit was breaking Genentech sales records year after year since the launch of a drug called Ocrevus in 2016. Because of the success of Ocrevus, the Neuroscience sales force, which was Coffey's department, was not offered the option to voluntarily resign and take severance. Instead, Coffey and his peers were told they would be

transitioned into a new business unit as Territory Account Managers ("TAM") and that nothing would change except for some management structure.

20. On April 30, 2020, at approximately 10:45 a.m., Coffey had a telephone conversation with his immediate supervisor, Petty, Genentech District Manager. During that conversation, Coffey stated to Petty that he wished the Multiple Sclerosis Sales Force that he was a part of had the option not to go forward into the TAM position, but instead have the option to voluntarily accept Genentech's severance package that was being offered to other divisions and leave Genentech. Coffey specifically questioned Petty as to why the Multiple Sclerosis Sales Force did not have that option when other Genentech sales forces did have the option to accept the severance package. Petty responded to Coffey by stating that he did in fact have the option to accept Genentech's severance package.

21. Petty further indicated to Coffey that Genentech's severance package option was being offered to any Genentech sales person who showed an interest in the severance package option. However, Petty told Coffey that Genentech management was not making this nationally known in the Neuroscience Business Unit but that she could discuss this option with him because Coffey had "broached the subject" with her.

22. During this same conversation, Petty represented to Coffey that if he did not want to become a TAM, that he could accept his Genentech severance and leave employment with the company.

23. Petty further represented that Genentech's Divisional Manager, Rich Freeman ("Freeman") had been discussing the same Genentech severance package option with another Multiple Sclerosis Sales Force representative, Jere Bain ("Bain"). Bain was a similarly-situated counterpart of Coffey, as he was a Multiple Sclerosis Sales Force representative as well.

24. Petty indicated to Coffey that Jones needed to know the names of the Multiple Sclerosis Sales Force representatives that were going to accept the Genentech severance package and leave the company by the "twenty-something of May," 2020.

25. At the conclusion of the April 30, 2020, telephone conversation with Petty, Coffey specifically asked, "So, I can elect to leave [Genentech] and get my severance?" Petty responded, "Yes."

26. Petty had been given the authority to offer a severance, identical to that offered to the other business unit sales representatives, to her representatives if proactively sought out by the employee, such as in the case of Bain and Coffey and, upon information and belief, other sales representatives.

27. On May 4, 2020, Coffey received a text message from Petty asking if Coffey intended to move forward as a TAM. Petty further advised in the text to Coffey that Jones was pushing "this way up on the timeline, I have no idea why. I put you down as a yes to move forward [as a TAM]."

28. Due to the need for an immediate response, Coffey responded to Petty that he would move forward as a TAM and remain a Genentech sales representative.

29. On May 1, 2020, Coffey spoke with a senior leadership employee at another pharmaceutical company that was seeking a sales representative in the Knoxville, Tennessee area. The pharmaceutical company encouraged Coffey to apply for its Knoxville area sales representative position.

30. On May 6, 2020, Coffey again was contacted by the pharmaceutical company regarding his interest in the Knoxville area sales representative position. Coffey told the pharmaceutical company that on May 4, 2020, he had decided to remain a sales representative with Genentech.

31. On May 8, 2020, at approximately 9:00 a.m., Coffey was again contacted by the pharmaceutical company attempting to recruit him as its Knoxville area sales representative.

32. On May 8, 2020, at approximately 12:00 p.m. (noon), Coffey advised Petty that he had been offered the Knoxville area sales representative position with another pharmaceutical company. During the discussion, Coffey asked Petty if it was too late for him to rescind his May 4, 2020, decision to move forward as a TAM, accept his severance and leave Genentech, as was offered to him just over a week prior. Petty stated to Coffey that she felt that it was a great opportunity and that either she or Coffey would need to notify Nelson of his decision.

33. On May 8, 2020, Coffey spoke with Nelson via telephone regarding his discussion with Petty. Coffey advised Nelson that Petty had offered him the Genentech severance package benefits on April 30, 2020, instead of going forward in the TAM role. Coffey also spoke to Nelson about the job offer with the other pharmaceutical company. Coffey asked Nelson, if Petty was correct in that he would qualify for the severance package.

34. Nelson replied affirmatively and assured Coffey, "Yes, your timing is perfect, I'll tell Mike [Jones] in plenty of time to roll you out for severance, this is an amazing opportunity for you."

35. During the May 8, 2020 telephone conversation with Nelson, Coffey specifically informed Nelson that, in the event he would not be eligible to receive his severance benefits from Genentech, he would remain employed with Genentech in the TAM role. Nelson reassured Coffey that he would be eligible to receive the Genentech severance benefits stating, "Timing is everything."

36. On May 8, 2020, at approximately 4:00 p.m., Petty telephoned Coffey informing him of "great news." She explained that she had also spoken with Nelson and that Coffey would be

Complaint
Page 7
Case 3:22-cv-00172-TAV-JEM   Document 1   Filed 05/17/22   Page 7 of 19   PageID #: 7

receiving his Genentech severance package benefits. Petty represented to Coffey that she was "100% certain" that he was eligible and would be receiving his Genentech severance package benefits.

37. Petty reassured Coffey stating, "There are a lot of people in this Company [Genentech] you can't trust but you can trust what Robert [Nelson] tells you and you will get your severance, I am positive." Mr. Coffey has a witness to this entire conversation.

38. On May 8, 2020 at approximately 5:52 p.m., after multiple assurances from Genentech management, Mr. Coffey contacted a management member of the pharmaceutical company that had offered him the Knoxville area sales representative position, advising that he had received affirmation from Genentech with regard to his severance and would, therefore, be accepting the position with them.

39. On May 12, 2020, Nelson telephoned Coffey confirming his eligibility for Genentech severance package benefits, stating that Genentech was able to roll him into the "Therapeutic Area Variance Window." Nelson stated that he had confirmed with Jones and assured Coffey he would collect his promised severance.

40. During the May 12, 2020 telephone call with Nelson, Coffey specifically questioned, "How can you guarantee I will, in fact get my severance and no curveballs?" Nelson responded, "Trust me, I got this … there is a Therapeutic Area Variance Window and you made it. It's all about timing. There were some doors opened for you and you just walk through them. There are a few other MS Reps that will not be retained through the process and you will not be retained like them. With the Therapeutic Area Variance window we [Genentech] can guarantee your severance 100% … I am 100% about your severance."

41. Coffey then told Nelson that, due to his 100% assurance of receiving his Genentech severance package benefits, he was going to accept employment with the other pharmaceutical company.

42. Nelson indicated to Coffey that his termination date with Genentech would be June 15, 2020, and that he could, therefore, begin his new job on June 16, 2020.

43. Nelson advised Coffey to reach out to Genentech Human Resources in a few days to talk about his Genentech stock, vacation days and any separation of employment questions.

44. On May 15, 2020, Jones telephoned Coffey. Jones told Coffey that he hated to see him leave Genentech, but congratulated him on his new employment opportunity.

45. Jones informed Coffey that he would talk with Genentech's lawyers regarding Coffey's eligibility for Genentech's severance benefits. Jones stated that he thought he could "get this done" and get Coffey's severance benefits paid.

46. On May 19, 2020, Petty contacted Coffey and informed him that Genentech had "changed the rules" on her and other senior leadership employees regarding eligibility for severance benefits. Specifically, Petty advised Coffey that Genentech was attempting to change the rules to exclude Coffey from receiving his severance package benefits.

47. On May 20, 2020, Petty confirmed to Coffey that, in fact, he would not be receiving his severance package benefits from Genentech, even though senior leadership had previously approved his eligibility and that he was included on the list of sales representatives who were eligible. Petty indicated, referencing Coffey's eligibility for Genentech severance package benefits, that Genentech's Human Resources representative Julie Wilson ("Wilson"), had "Shut it down."

48. In mid-June 2020, Coffey separated from his employment with Genentech.

49. Coffey avers that his separation of employment from a twenty (20) year career with Genentech was not "voluntary," but was induced by the representation, offer and his acceptance of severance benefits from Genentech management.

50. In their management capacities with Genentech, Petty, Nelson and Jones were vested with authority and/or were designated by the Plan Administrator as having such authority to represent to Coffey that he was eligible, as a Multiple Sclerosis Sales Force representative, for severance package benefits under the TAVWSP if he voluntarily resigned from his employment with Genentech.

51. Petty and Nelson represented to Coffey that he was eligible for benefits under the TAVWSP and that he would receive severance benefits upon his separation from employment. Both Petty and Nelson knew or should have known that Coffey would be relying upon these representations in deciding whether to remain at Genentech or to voluntarily retire and accept other employment.

52. Coffey justifiably relied upon these representations and in fact told Petty and Nelson that he was relying on their reassurances in making his decision to voluntarily resign and accept other employment.

53. Jones represented to Coffey that he was eligible and would be receiving severance benefits. Jones knew or should have known that Coffey would rely upon such representations in deciding whether to remain at Genentech or to pursue other employment.

54. Coffey justifiably relied upon the representations made to him by Jones regarding his eligibility for severance benefits.

55. In reliance upon these representations, Coffey terminated his employment with Genentech and accepted employment with another pharmaceutical company.

56. On or about June 26, 2020, Coffey, through counsel, inquired about his severance package benefits. In this letter from Coffey's counsel to Genentech general counsel, it was explicitly stated that Coffey was claiming benefits promised to him as a result of the TAVWSP.

57. On July 21, 2020, counsel for Genentech, Tracy Todd replied that severance benefits at Genentech are solely governed by the Genentech/La Roche Pharma Transitional Benefits Plan and that Coffey failed to meet the requirements for eligibility under that Plan.

58. In response to this letter, on or about January 29, 2021, counsel for Coffey filed a claim for severance benefits under the Genentech/Roche Pharma Transitional Benefits Plan.

59. On March 5, 2021, Coffey received notice of Genentech's denial of his claim for benefits and notifying him of his right to appeal.

60. Coffey timely appealed Genentech's denial on November 8, 2021.

61. Genentech issued its final denial of benefits under the Genentech/Roche Pharma Transitional Benefits Plan on January 24, 2022.

62. Although, upon information and belief, there is no formal written plan document for the TAVWSP, it is an ERISA welfare plan as defined in Title I of ERISA because it is a plan for severance benefits under Section 3 of ERISA and a reasonable person could ascertain the following: 1) intended benefits and intended beneficiaries, 2) a source of financing and 3) a procedure for receiving benefits. *Fort Halifax Packing Co. v. Coyne*, 482 U.S. 1 (1987).

63. As an ERISA governed plan, the TAVWSP is subject to certain formalities – including the requirement of a written plan document, participant disclosure requirements, including distribution of a summary plan description, summaries of material modifications and/or summary annual reports, the filing of an annual return (Form 5500) and ERISA fiduciary requirements.

64. Coffey has not been provided a copy of a plan document or summary plan description for the TAVWSP and, upon information and belief, no such plan documents exist.

65. Upon information and belief, Genentech, as Plan Administrator, has failed to comply with ERISA requirements and is subject to taxes and penalties therefore.

66. In addition, Genentech, as Plan Administrator and fiduciary for the plan, has breached its fiduciary duties to Coffey.

67. In the alternative, Genentech breached its oral contract with Coffey by failing and refusing to provide severance benefits as agreed to upon his separation of employment.

68. Furthermore, and in the alternative, Genentech, by and through its agents, negligently misrepresented that severance benefits would be payable to Coffey upon his separation of employment.

69. Finally, and in the alternative, Genentech should be estopped from disclaiming liability for the promises made to Coffey with regard to his promised severance benefits.

## CAUSES OF ACTION

### COUNT I

**CLAIM FOR PENALTIES UNDER ERISA § 502(a)(1)(A), 29 U.S.C. §1132(a)(1)(A) AND ERISA § 502(c), 29 U.S.C. § 1132(c)**

70. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

71. Section § 3(1) of ERISA defines "employee welfare benefit plan" in relevant part as "any plan, fund, or program . . . established more maintained by an employer or by an employee organization, or both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the

purchase of insurance or otherwise . . . vacation benefits [or] any benefit described in section 302(c) of the Labor Management Relations Act, 1947 (other than pensions on retirement or death, and insurance to provide such pensions)."

72. The term "employee welfare benefit plan" include plans providing "(i) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment [severance], or vacation benefits . . . ." 29 CFR § 2510.3-1.

73. The TAVWSP is an ERISA welfare benefit plan as defined in ERISA § 3(1); therefore, it is subject to the reporting and disclosure requirements contained in Part 1 of Title I of ERISA.

74. ERISA § 502(c), 29 U.S.C. § 1132(c) provides for civil penalties against plan administrators for failure to meet those obligations.

75. ERISA § 502(a)(1)(A), 29 U.S.C. § 1132(a)(1)(A) provides a private right of action by participants or beneficiaries to enforce civil penalties provided for in ERISA § 502(c).

76. ERISA § 104(b)(4), 29 U.S.C. §1024(b)(4) requires a plan administrator to provide a summary plan description ("SPD") to participants or beneficiaries upon request.

77. Genentech, as Plan Administrator, failed to provide an SPD for the TAVWSBP to Plaintiff upon his request via counsel.

78. ERISA § 502(c)(2), 29 U.S.C. § 1132(c) allows for a maximum $110 per day penalty for failure to provide a plan participant with an SPD within 30 days of request.

79. ERISA further requires a plan administrator to file an annual report with the Department of Labor (the Form 5500 series), containing the financial and other information concerning the operation of the plan, and to provide participants/beneficiaries of a summary of the annual report upon request ERISA §104(b)(4), 29 U.S.C. §1024(b)(4).

80. Genentech, as Plan Administrator, failed to file an annual report with the Department of Labor and to provide a summary of this annual report to Plaintiff.

81. Genentech provided only the Genentech/Roche Pharma Transitional Benefit Plan, even though Plaintiff indicated in his request that he was claiming benefits under the TAVWSP.

82. Genentech, as Plan Administrator, should be liable to Plaintiff for penalties under ERISA 502(c) for failing to provide the relevant plan documents, failure to file Form 5500s, and failing to provide a summary annual report to Plaintiff from the date of Plaintiff's first request for plan information, June 26, 2020, through the present.

## COUNT II

### CLAIM FOR BENEFITS UNDER THE TERMS OF THE PLAN, ARISING UNDER ERISA §502(a)(1)(B); 29 U.S.C. § 1132(a)(1)(B)

83. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

84. ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) provides a plan beneficiary with a civil action to recover benefits due under the terms of a plan; to enforce his rights under the terms of the plan; or to clarify his rights to future benefits under the terms of the plan.

85. Coffey is a plan beneficiary of the TAVWSP.

86. Coffey was improperly denied the benefits promised to him under that plan.

87. Coffey is entitled to recover the benefits promised and due to him under the terms of the plan.

## COUNT III

### CLAIM FOR EQUITABLE RELIEF UNDER ERISA § 502(a)(3) FOR BREACHES OF FIDUCIARY DUTIES UNDER ERISA § 404(a)(1), 29 U.S.C. §§1101-1114

88. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

89. ERISA provides:

> A fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of:
> (i) providing benefits to participants and their beneficiaries; and
> (ii) defraying reasonable expenses of administering the plan;
>
> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

ERISA § 404(a)(1); 29 U.S.C. § 1104(a)(1).

90. One aspect of these duties is the requirement that a fiduciary communicate benefits accurately to plan participants. A fiduciary must give complete and accurate information in response to a participant's questions. *Drennan v. General Motors*, 977 F.2d 246, 251 (6th Cir. 1992); *Gregg v. Transportation Workers of America International*, 343 F.3d 833 (6th Cir. 2003).

91. Genentech breached that duty by repeatedly and consistently indicating to Coffey (through its agents) that he was eligible for benefits under the TAVWSP and then unilaterally revoking those benefits without allowing him to file a benefit claim or affording him an appeal under that plan.

92. Further, a benefit determination is a fiduciary act, and the plan's named fiduciary for deciding claims to benefits and appeals of denied claims under an ERISA plan owes plan beneficiaries a special duty of loyalty. This duty requires the claims administrator to interpret and apply plan terms "solely in the interest of the participants and beneficiaries and . . . for the exclusive

purpose of . . . providing benefits to participants and their beneficiaries." ERISA § 404, 29 U.S.C. § 1104(a)(1)(A)(i).

93. Genentech breached its fiduciary duties in its benefit determination because it failed to even consider Coffey's claims under the TAVWSP.

94. Genentech should be held liable for damages sustained by Coffey due to Genentech's fiduciary breaches.

## COUNT IV

## COMMON LAW BREACH OF CONTRACT

95. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

96. Genentech and Coffey entered into a valid, enforceable oral contract.

97. The terms of the contract can be sufficiently determined through communications between Coffey and Genentech during the period of April 30, 2020 through May 12, 2020.

98. As consideration for the contract, Genentech agreed to pay Coffey his severance benefits, to include fully-vested Genentech stock benefits, unused vacation pay and other benefits through Genentech's TAVWSP, in exchange for Coffey agreeing to voluntary separate from employment.

99. Plaintiff performed all obligations required of him under the oral contract, as he agreed to not move forward in the TAM role and voluntarily separated from employment.

100. Genentech failed to perform its obligations under the contract in that it failed and refused to properly compensate Coffey in accordance with the terms of their oral contract and has, therefore, breached such agreement.

101. As a direct and proximate result of Genentech's conduct in breach of the agreement, Coffey has suffered actual, compensatory and consequential damages in excess of $300,000.00, which Mr. Coffey will show according to proof at trial.

## COUNT V

### NEGLIGENT MISREPRESENTATION

102. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

103. Genentech made misrepresentations of material fact regarding payment of severance benefits to induce Coffey to decline a position as a TAM and to terminate his employment.

104. Specifically, Genentech misrepresented to Coffey that he would receive severance benefits under the TAVWSP upon his voluntary separation from employment.

105. Genentech agents were negligent in making these misrepresentations, because they knew or should have known the representations were false and/or they made the representations without knowledge of their truth or falsity.

106. Coffey justifiably relied on Genentech's misrepresentations by declining the TAM position, accepting a position with an outside employer and voluntarily separating from employment.

107. As a direct and proximate cause of Genentech's negligent misrepresentations, Coffey has been damaged in that he was denied the severance benefits promised to him.

## COUNT VI

### PROMISSORY ESTOPPEL

108. The allegations set forth in paragraphs 1 – 69 are incorporated herein by reference as though fully set forth.

109. Genentech promised Coffey severance benefits under the TAVWSP.

110. Genentech should have reasonably expected for Coffey to rely upon those promises and to act upon those promises.

111. Coffey did in fact rely upon the promises of severance benefits under the TAVWSP by forfeiting his opportunity to proceed as a TAM with Genentech and by voluntarily separating from employment from Genentech.

112. Injustice can be avoided only by enforcement of the promises made by Genentech to Coffey. *Alden v. Presley*, 637 S.W.2d 862, 864 (Tenn. 1982).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Eric Coffey respectfully prays for relief as follows:

I. That process issue and Defendants be required to answer this Complaint within the time prescribed by the Federal Rules of Civil Procedure;

II. That Defendant be required to pay penalties pursuant to ERISA § 502(a)(1)(A), not to exceed $110 per day from June 26, 2020, through present;

III. That Plaintiff be awarded severance pay and all benefits due under the Plan pursuant to ERISA § 502(a)(1)(B);

IV. That Plaintiff be awarded such equitable relief pursuant to ERISA § 502(c)(3) due to Defendant's breaches of fiduciary duties as provided in ERISA §404;

V. In the alternative, that Plaintiff be awarded monetary damages suffered as a result of Genentech's breach of oral contract, including payment of all severance benefits promised;

VI. In the alternative, that Plaintiff be awarded monetary damages suffered as a result of Genentech's negligent misrepresentations, including payment of all severance benefits promised;

VII. In the alternative, that Plaintiff be awarded monetary damages as a result of the injustice suffered by Plaintiff on his claim for promissory estoppel;

VIII. That Plaintiff be awarded prejudgment interest as well as litigation costs and expenses, including reasonable attorneys' fees;

IX. That Plaintiff be awarded such other legal and equitable relief to which Plaintiff may be entitled.

Respectfully submitted,

*/s/ James A. Holifield, Jr.*
**James A. Holifield, Jr., Esq.** (BPR #015494)
HOLIFIELD & JANICH, PLLC
11907 Kingston Pike, Suite 201
Knoxville, Tennessee 37934
(865) 566-0115
aholifield@holifieldlaw.com


*/s/Jeffrey C. Taylor*
**Jeffrey C. Taylor, Esq.** (BPR #013436)
TAYLOR LAW FIRM
365 West Third North Street
Morristown, Tennessee 37814
(423) 586-6812
jeff@taylorlawfirmtn.com

*Attorneys for Plaintiff*

4884-3940-7900, v. 3